IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| MUZHGAN I. NAZAROVA, | ) |
| Plaintiff, | ) Case No. 1:16-CV-00910-WO-JEP |
| v. | ) |
| DUKE UNIVERSITY | ) |
| Defendant. | ) |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

NOW COMES the Plaintiff ("Plaintiff" or "Dr.Nazarova"), *pro se*, responding to the Defendant's Motion to Compel Arbitration filed in this case. On March 6, 2016, the Plaintiff filed a Complaint seeking damages against Defendant ("Duke" or "Defendant") for violation of Plaintiff's rights under Federal law, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. On August 15, 2016, Defendant filed a Motion to compel Arbitration, presenting a mutually binding arbitration agreement as grounds in support of Defendant's motion. The Plaintiff opposes the Defendant's motion and contends that the written agreement to arbitrate is both substantively and procedurally unconscionable and therefore unenforceable under statutory and common law. In support of her position Plaintiff's respectfully submits the following:

2

# STATEMENT OF FACTS

## I. UNREASONABLE PRESSURE TO SIGN THE NEW HIRE PAPERWORK

On or about August 1, 2012 the Plaintiff received her job offer letter (Exhibit A) from Duke for the Position of Slavic Language Cataloger, effective October 1, 2012. In "connection with her application for employment with Duke" (Doc. 12 Declaration of Denise Evans (hereinafter "Evans Decl" p. 5) the Plaintiff was asked to make an appointment with Duke's Library Human Resources (hereinafter "LHR") Specialist prior to her start date in order to complete her "new hire paperwork" *Id.*

After 16 days of accepting her offer from Duke and 47 days to her official start date on or about October 1, 2012, the Plaintiff, who resided in Cleveland, Ohio at the time and who was visiting Durham, NC on or about August 16, 2012 to look at potential residencies, reported to Duke's LHR Office on August 17, 2012 to complete her new hire paperwork with one of Duke's LHR Specialist – Teresa Tillman ("LHR Specialist" or "Tilllman"), with whom the Plaintiff made the appointment and communicated prior to her visit and who suggested that the Plaintiff complete her new hire paperwork at that time. (Exhibit B, pp. 1-2) During that meeting LHR Specialist presented the Plaintiff with multiple forms to sign, as part of the hiring process,. These forms were presented to the plaintiff as part of an agreement that she was required to sign as a condition of obtaining employment. It was a " take it or leave it" type of deal added to the fact that she was being a little rushed by LHR Specialist who herself was rushing to a meeting.

3

The whole process of signing the paperwork took on or about 20 minutes, whereas she was previously notified by Tillman that it will take at least 45 minutes to complete. (Exhibit B).

## II - CANDIDATE CERTIFICATION FORM AND BARGAINING POWER DISPARITY

Two of the forms presented as new hire paperwork to Plaintiff by the LHR Specialist were the "Candidate Certification Form" (Doc. 12 Defendant's Motion Memorandum Exhibit B (hereinafter "Def' Mot. Memo. Exhibit B"), and Duke University Confidentiality Agreement (Exhibit C). In their motion, defendants set out the mandatory arbitration clause, which is in actuality hidden in the 'Candidate Certification Form" *Id.* part of their enrollment agreement, in normal print (Def. Mot. Memo. pp. 3-4), For readability, defendants used bold and underline typography to outline parts of the agreement. The appearance of the text of the arbitration clause in the "Candidate Certification" form (Def' Mot. Memo. Exhibit B, 4.) Is substantially different .The agreement on the actual form is in fine print *Id.* and appears hidden in between intensely text of other six unrelated clauses is lodged in between Candidate Certification and Equal Opportunity Information Forms which are placed on the same page as can be seen in (Def' Mot. Memo. Exhibit B 4.) with a blank signature line to be filled out in the middle, not clear as to what form it is pertaining especially since the only space to be filled out, complete with empty checkboxes, appears on the bottom of the sheet under the Equal

4

Opportunity Information Form which takes away the attention from the top of the page where the arbitration clause is lodged *Id.*. The way that arbitration clause is presented on the Candidate Certification form is in stark contrast to the Confidentiality Agreement (Exibit B) appearing just on the next page. Unlike the Arbitration clause the Confidentiality Agreement is presented in larger font with generous spacing and lists the complete rules and policies of the agreement and is even complete with some of the examples of breaches of confidentiality covered by this agreement.

In the Declaration of Denise Evans ("Evans") submitted in the Defendant's Motion to Compel Arbitration (Doc. 12 pp.2) she states that the "true and accurate copy" of the "DPR" is always available to employees on line from the department of Human Resources" (Def. Mot. Evans Declartn). Based on her statement she implies that only Duke employees will know about existence of such procedure, however when signing the "Candidate Certification" *Id.* the Plaintiff was not yet considered to be an employee of duke but rather as the title of the form states she was a "Candidate" and simply could not be aware of the DPR by the simple fact of the Plaintiff was not yet an employee. Therefore when signing the "Certification Form" could not be aware of DPR by the simple fact of him not yet being an employee.

The Defendant makes an incorrect assumption in her motion stating, "Plaintiff received notice of the DRP and agreed, in writing, to be bound by its terms" (Def. Mot. Mon, pp. 3 -4) and further implying that the Plaintiff agreed to DRP terms when signing the Candidate Certification form "Specifically, on August 17, 2012) Id. The "Plaintiff" was

5

not presented with the copy of Duke's DRP or the Duke Staff Handbook (https://www.hr.duke.edu/policies/

https://issuu.com/workingatduke/docs/dukehandbook_2016_final/1 - link included since the evidence is too Bulky) nor was she made aware of the terms Duke's DPR Policies by the LHR Specialist on August 17, 2012, when she was being rushed to sign the Candidate Certification form by the LHR specialist handling her file. Even after becoming a full-time employee and working at Duke for more than two years, the plaintiff still was not familiarized with the DRP terms and procedures and did not even receive a copy of the Staff Handbook *Id.* from her supervisor ("supervisor" or "Sommerville"), which she was supposed to receive within her first "90 – calendar day orientation and evaluation period" (Exhibit D) at Duke as requires by Human Resources Required Training &Policies for new staff (Exhibit D). As Part of Duke Human Resources Policies it is one of the duties of the Supervisor to "Complete a review of the Duke Staff Handbook as well as all relevant entity or department policies and procedures." for "all new staff members" (Exhibit I) Further, after the supervisor completed the full review of the Duke Staff handbook with the new staff, both "the new staff and their "supervisor must sign and date p. 47 in the Duke Staff Handbook (Exhibit F). A copy will be placed in your department personnel file and the original document will be returned to" the new staff. Id In the case of the Plaintiff, the supervisor never presented the Plaintiff with a copy of a Duke Staff Handbook within the first 90 days of the Plaintiff's employment and didn't have any discussion or review of Duke Human Resources Policies with the Plaintiff, of which DRP is a part of. It took the supervisor on or about 27 months after the start of Plaintiff's

employment on October 12, 2012 to mention something to the Plaintiff about the Duke Staff Handbook and Duke's Human Resources policies, and that only happened because, of the audit of Duke University Libraries (DUL) personnel files. It was then, that she realized that the "Duke Staff Handbook: Acknowledgment of Receipt" (hereinafter "Acknowledgment of Receipt") form was missing from Plaintiff's personnel file. After making the discovery she requested that the Plaintiff review the policies listed on the Acknowledgment of Receipt *Id*. of Duke Staff Handbook (Handbook) *Id*. on December 11th, 2014 and return the form to her, Somerville was busy and rushed through the process of reviewing the Policies with the Plaintiff, not spending enough time reviewing the Policies *Id*. in particular the DRP section of the handbook, which can be seen by looking at the notes made by the Plaintiff on the form *Id*. One can see that the Plaintiff was not previously made aware of the Handbook by her supervisor, because Somerville didn't perform her duties according to Duke's policies initially and no effort was made by Sommerville to familiarize the Plaintiff with DHRPs after the fact. Those notes also show that the Plaintiff was simply not familiar and didn't fully understand the Duke's Human Resource Policies, and even more so the Dispute Resolution Process as noted on the Acknowledgment of Receipt *Id.*

## ARGUMENTS

## DEFENDANT'S ARBITRATION AGREEMENT IS UNCONSCIONABLE UNDER NORTH CAROLINA CONTRACT LAW

Plaintiff recognizes that under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), written agreements to arbitrate a dispute arising out of a transaction involving commerce are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. However, "[t]he FAA allows state law to invalidate an arbitration agreement, provided the law at issue governs contracts generally and not arbitration agreements specifically." Bess v. Check Express, 294 F.3d 1298, 1306 (11th Cir. 2002). Thus, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686–87 (1996).

The Uniform Commercial Code (U.C.C.) § 2-302: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any

8

North Carolina cases adopt a similar definition, stating that a contract is unconscionable if "the inequality of the bargain is so manifest as toshock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." Brenner v. Little Red School House, Ltd., 302 N.C. 207, 213, 274 S.E.2d 206, 210 (1981).

Courts sometimes divide unconscionability into procedural and substantive components. See Sidden v. Mailman, 137 N.C. App. 669, 675, 529 S.E.2d 266, 271(2000). "Procedural unconscionability involves fraud, coercion, duress, undue influence, inadequate disclosure, and misrepresentation in t the formation of the contract. Substantive unconscionability involves harsh, one- sided, and oppressive terms of a contract" sufficient to satisfy the definition in Brenner, above

Plaintiff claims that the "mutual arbitration clause" between the Defendant and Plaintiff is both substantively and procedurally unconscionable. Substantive because the plaintiff was made to sign the "Candidate Certification" which included the hidden arbitration clause and was packaged as "new hire paperwork", under unreasonable pressure, because the Plaintiff was visiting Durham, NC from out of state and was not aware that from out of state was given a real choice of not signing the agreement since she was visiting from out of state and wouldn't not be able to take the agreement with her, if that was an even an option and come back to an office after considering and reviewing the agreement. She was forced to sign the forms without ever meeting with her supervisor or getting a chance

9

to get acquainted with the Duke's policies and finally she was sort of rushed through the process of signing by Duke staff and had limited time to review the agreements.

The agreement was procedurally unconscionab because when signing the agreement the Plaintiff was not qualified or recognized as an employee and was not aware of existence of Duke policies, which can clearly be seen from all the facts provided above.

## CONCLUSION

For all foregoing reasons, the court should deny the Defendant's Motion to Compel Arbitration.