IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


MUZHGAN I. NAZAROVA,            )
                               )
            Plaintiff,         )
                               )
    v.                         )        1:16CV910
                               )
DUKE UNIVERSITY,               )
                               )
            Defendant.         )


## <u>MEMORANDUM OPINION AND ORDER</u>

**OSTEEN, JR., District Judge**

Presently before this court are Duke University's ("Duke" or "Defendant") Motion to Compel Arbitration or, in the Alternative, to Dismiss the Complaint for Lack of Subject Matter Jurisdiction (Doc. 11) as well as pro se Plaintiff Muzhgan I. Nazarova's ("Nazarova" or "Plaintiff") Motion to Strike Defendant's Motion to Compel (Doc. 20) and Motion for Leave to File Suplemental [sic] Complaint (Doc. 21). For the following reasons, Duke's motion will be granted and Nazarova's motions will be denied.

# I. DEFENDANT'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

## A. Background

### 1. Facts

"Nazarova's religion is Islam, and her national origin is Azerbaijan." (Complaint ("Compl.") (Doc. 2) ¶ 10.) Plaintiff "began employment at Defendant's Library in Durham, North Carolina as a Catalog Librarian for Slavic Resources on or about October 1, 2012." (Id. ¶ 8.) Natalie Sommerville was Plaintiff's supervisor and Amy Turner was her trainer. (Id. ¶¶ 11, 12.)

"In or about February 2014 Nazarova began to experience numerous derogatory religion and national origin-based comments from Turner. Specifically, Turner repeatedly called Nazarova a 'cultural Muslim' and made derogatory statements about Nazarova being a foreigner who was lacking in her ability to speak English." (Id. ¶ 13.) "On or about February 24th, 2014, Nazarova complained about Turner's derogatory comments about her religion and national origin to Sommerville[] and subsequently to Human Resources Manager Kim Burhop-Service [] on or about May 7th, 2014." (Id. ¶ 14.) Plaintiff alleges "no investigation of Nazarova's complaints was performed, nor was any action taken against Turner." (Id.)

-2-

"Nazarova received negative comments on her performance
review from Sommerville about her inability to accept
performance feedback from others" on two separate occasions –
May 8, 2014, and September 5, 2014. (Id. ¶ 15.) Also on
September 5, 2014, "Nazarova was informed by Sommerville that
she was not recommending her for a tenured position with the
University." (Id. ¶ 17.)

"Nazarova filed a charge of discrimination and retaliation
with the University's Office of Institutional Equity [] on or
about September 6, 2014." (Id.) Also during September 2014,
"Nazarova filed an EEOC charge of discrimination" and "met with
the University Librarian Deborah Jakubs [] and Associate
University Librarian for Collections Robert Byrd [] and raised
her concerns about discriminatory and retaliatory actions
against her." (Id. ¶ 18.) Plaintiff alleges that neither party
took any action in response to her claims. (Id.)

"In or about November 2014, Turner and Sommerville revoked
Nazarova's cataloging 'independence' status." (Id. ¶ 19.) "On or
about December 17, 2014, Nazarova received a letter from Jakubs,
informing Nazarova that she was not selected for the continuing
appointment and was being placed on a two-year probationary
status as a result of [the] recommendation of Sommerville and
Turner." (Id. ¶ 20.) Nazarova filed another "EEOC charge of

-3-

discrimination and retaliation" against Duke "on or about March 27, 2015." (Id. ¶ 21.) She also alleges that "[s]oon after filing this charge, Nazarova began experiencing regular hostility and a lack of cooperation from her coworkers." (Id.)

In April 2015, Plaintiff alleges that "Sommerville intensified her scrutiny of Nazarova's cataloging duties, and attributed errors to Nazarova" in a discriminatory way. (Id. ¶ 22.) In July 2015, Sommerville and Burhop-Service refused to provide Nazarova with access to the Duke's "Aleph" Report tracking system, which would be able to substantiate her alleged "error rates." (Id. ¶ 23.) In August 2015, Sommerville put Nazarova on a "Performance Improvement Plan" that was allegedly more strict than the standard applied to other employees. (Id. ¶ 24.) In November 2015, "Nazarova received a written warning from Sommerville," which she alleges was incorrect. (Id. ¶ 27.) Plaintiff received a second allegedly incorrect written warning for similar errors in February 2016. (Id. ¶ 29.)

"Because of the discrimination and retaliation against Nazarova by the University, and the ongoing hostility from coworkers, Nazarova felt compelled to resign, and submitted her notice of resignation on or about March 14, 2016." (Id. ¶ 32.) "Nazarova filed an additional charge of discrimination and retaliation [] on March 28, 2016." (Id. ¶ 30.)

-4-

### 2. <u>Claims</u>

Plaintiff brings her first claim under Title VII, alleging discrimination and disparate treatment due to religion and national origin under 42 U.S.C. § 2000e. (<u>Id.</u> ¶¶ 33-41.) Plaintiff alleges that she "was not selected for the continuing appointment as a Catalogue Librarian" and that she "was held to significantly stricter standards and scrutiny of her work" due to her race and religion. (<u>Id.</u> ¶¶ 36-38.) Plaintiff claims "lost wages, salary, benefits, and emotional distress" as well as punitive damages. (<u>Id.</u> ¶¶ 39-40.)

Plaintiff's second claim is a Title VII retaliation claim. (<u>Id.</u> ¶¶ 42-53.) Plaintiff alleges that, as she reported the aforementioned racial and religious discrimination through appropriate University and EEOC channels, she experienced various forms of backlash. (<u>Id.</u>) Plaintiff claims "lost wages, salary, benefits, and emotional distress, mental pain, suffering, stress, grief, worry and mental anguish" as well as punitive damages. (<u>Id.</u> ¶ 51.)

Plaintiff's third claim is a Title VII constructive discharge claim. (<u>Id.</u> ¶¶ 54-61.) Plaintiff alleges that the sum total of the situation caused her "working conditions [to become] so intolerable, a reasonable employee encountering like conditions would have been compelled to resign her employment."

-5-

(Id. ¶ 58.) Plaintiff claims "lost wages, salary, benefits, and emotional distress, mental pain, suffering, stress, grief, worry and mental anguish" as well as punitive damages. (Id. ¶ 58.)

## B.  Discussion

Defendant moves to compel arbitration or, in the alternative, to dismiss the complaint for lack of subject matter jurisdiction. (See Doc. 11.) In support of this motion, Defendant has filed the affidavit of Denise Evans, which contains Duke's Dispute Resolution Process and the "Candidate Certification" form containing the arbitration agreement and bearing Plaintiff's signature.[1] (Def.'s Mem. in Supp. of Mot. to Compel ("Def.'s Br."), Decl. of Denise Evans ("Evans Decl.") (Doc. 12-1), Ex. A attached to Decl. at 5–10, Ex. B attached to Decl. at 11–12.) Defendant contends these two documents control Plaintiff's rights as an employee and compel arbitration. (Def.'s Br. (Doc. 12) at 2–10.)

---

[1] The Fourth Circuit has provided that "we may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). Here, neither party contests the validity of either document. Further, these documents purportedly control Plaintiff's right to continue this litigation or Defendant's right to compel arbitration. As such, this court finds that consideration of the referenced documents is proper.

-6-

Defendant initially notes that "although not required by the FAA or North Carolina law, the agreement with Plaintiff is in writing and signed." (Def.'s Br. (Doc. 12) at 7.) "Duke required Plaintiff to agree to submit employment-related grievances to the DRP [Dispute Resolution Process] as a condition of employment," to which "Plaintiff agreed by signing the written agreement and by reporting to work and continuing employment up to the time of her resignation on or about March 14, 2016." (Id. at 7-8.) Defendant further argues that "the arbitration agreement binds both Plaintiff and Duke to arbitrate claims within its scope." (Id. at 8.)

Plaintiff does not dispute the veracity of these documents, but instead contends: (1) that her agreement with Duke is a contract of adhesion, (2) that the agreement is unconscionable, and (3) that Duke materially breached the agreement. (Pl.'s Resp. in Opp'n to Def.'s Mot. to Compel Arbitration ("Pl.'s Resp.") (Doc. 16) at 1-2.)

The Federal Arbitration Act ("FAA") governs the resolution of private disputes through arbitration. 9 U.S.C. § 1 et seq. Section 2 of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or

> an agreement in writing to submit to arbitration an
> existing controversy arising out of a contract,
> transaction, or refusal, shall be valid, irrevocable,
> and enforceable, save upon such grounds as exist at
> law or in equity for the revocation of any contract.

9 U.S.C. § 2. Courts must compel arbitration when a valid arbitration agreement exists because the FAA's provisions are mandatory. See 9 U.S.C. § 2; see also Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) ("Thus, insofar as the language of the Act guides our disposition of this case, we would conclude that agreements to arbitrate must be enforced . . . ."). In order to compel arbitration under the FAA, a party must show: (1) that a dispute between the parties exists, (2) that a contract between the parties includes an arbitration provision which would seem to cover the dispute, (3) that the contract or transaction at issue involves interstate or foreign commerce, and (4) that one party refuses to arbitrate the dispute. See Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002).

With regards to the four factors outlined in Adkins, the parties in the present case only contest the existence of "a written agreement that includes an arbitration provision which purports to cover the dispute." Id. at 500-01. As such, Defendant must show that the contract includes an arbitration provision which covers the dispute in this case. See id. "It is

-8-

for the court, not the arbitrator, to decide in the first
instance whether the dispute is to be resolved through
arbitration . . . [and the court] engage[s] in a limited review
to ensure that the dispute is arbitrable – i.e., that a valid
agreement to arbitrate exists between the parties and that the
specific dispute falls within the substantive scope of that
agreement." <u>Hooters of Am., Inc. v. Phillips</u>, 173 F.3d 933, 937–
38 (4th Cir. 1999) (internal punctuation and quotation marks
omitted).

### 1.   A Valid Agreement to Arbitrate Exists

Defendant has filed the "Candidate Certification" form
containing the arbitration agreement. (Evans Decl., Ex. B (Doc.
12-1) at 12.) Plaintiff does not contest the Candidate
Certification form or the fact that she signed it.

Plaintiff alleges[2] that she had a meeting with one of Duke's
human resources specialists in order to complete her "new hire
paperwork," but that the employee "was in a hurry to get to
another meeting, presented the Plaintiff with various forms

---

[2] Plaintiff alleges a number of new facts throughout her
response, which often intertwine with her legal arguments. (<u>See</u>
Pl.'s Resp. (Doc. 16) at 2-15.) While these facts should be
included in the complaint, this court has considered many of
these facts where relevant due to the liberal standard of review
afforded a <u>pro se</u> plaintiff and the potential for amendment to
the complaint.

without explaining them to her and barely [gave] her a chance to look through the documents [ ] as she was signing." (Pl.'s Resp.) (Doc. 16) at 2-3.)

Plaintiff further alleges that the "new hire paperwork" was presented to her on a "take it or leave it basis" without the opportunity to negotiate the terms of her employment. (Id. at 4.) She alleges that "[b]ecause the complete terms, such as Duke's requirement of being bound by the DRP procedures, do not appear in the text of the actual arbitration agreement but rather appear in a different location and were not expressly stated to the Plaintiff at the time of signing it, the agreement is not a full contract." (Id. at 5.)

Plaintiff argues that Duke's Exempt Staff Member Dispute Resolution Procedure ("DRP") "lacks consideration for the Plaintiff and is [u]nfair" as it prevents staff members from filing a formal grievance for "disagreement with performance evaluation rating" or "as [a] result of a job classification or reclassification," instead suggesting that "[t]he staff member should discuss these circumstances with his or her supervisor's supervisor." (Id. at 6-7.) Plaintiff argues that this shortcoming in the system exposed her to the alleged retaliation in the present lawsuit. (Id. at 7.)

-10-

Plaintiff argues that, "by not disclosing important information about the conditions of the job offer," Duke "gained an enormous advantage in 'bargaining power'," which forced the Plaintiff "into a very stressful and psychologically vulnerable situation where [she had] to make a very tough but [] instant choice [] between signing or leaving their job offer." (Id. at 8-9.)

Plaintiff also alleges that "[t]he so-called agreement to arbitrate uses very fine print . . . and [] is lodged in the midst of the intensely clumped text of other six clauses, which purposefully confuses the eye and misleads the applicant into not seeing the arbitration clause." (Id. at 9-10.)

Plaintiff alleges that, despite working at Duke for two years, she was never given any training regarding the DRP and never received a "Duke Staff Handbook." (Id. at 11-12.) Plaintiff alleges that when she finally did receive the handbook on a later date, "Somerville [sic] was busy and rushed through the process of reviewing the Policies with the Plaintiff, in particular the DRP section of the handbook." (Id. at 12.)

Plaintiff's material breach theory is based on her argument that Defendant's alleged failure to take appropriate action in response to her workplace complaints constitutes a material breach of contract. (Id. at 12-15.)

"In determining whether the parties executed a valid agreement to arbitrate, courts generally apply ordinary state-law principles that govern the formation of contracts." Sydnor v. Conseco Fin. Servicing Corp., 252 F.3d 302, 305 (4th Cir. 2001). As such, this court turns to North Carolina contract law. "North Carolina has a strong public policy favoring the settlement of disputes by arbitration. Our strong public policy requires that the courts resolve any doubts concerning the scope of arbitrable issues in favor of arbitration." Johnston Cty. v. R.N. Rouse & Co., 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992).

North Carolina law has long recognized that "[o]ne who signs a written contract without reading it, when he can do so understandingly, is bound thereby unless the failure to read is justified by some special circumstance." Davis v. Davis, 256 N.C. 468, 472, 124 S.E.2d 130, 133 (1962). Further, the signing party bears the responsibility to understand the agreement for him or herself, "[i]f unable to read or write, he must ask that the paper be read to him or its meaning explained." Williams v. Williams, 220 N.C. 806, 18 S.E.2d 364, 366 (1942); see Sch. Comm. of Providence Twp. v. Kesler, 67 N.C. 443, 444 (1872).

> In this state it is held that one who signs a paper-writing is under a duty to ascertain its contents, and in the absence of a showing that he was wilfully misled or misinformed by the defendant as to these contents, or that they were kept from him in

-12-

> fraudulent opposition to his request, he is held to
> have signed with full knowledge and assent as to what
> is therein contained.

<u>Williams</u>, 18 S.E.2d at 366.

On August 17, 2012, Plaintiff signed the Candidate

Certification form. (Evans Decl., Ex. B (Doc. 12-1) at 12.) The

form states that:

> I hereby agree that any dispute or controversy arising
> out of or related to my employment or termination by
> Duke University . . . shall be subject to final and
> binding resolution through the applicable grievance or
> dispute resolution procedure, as may be periodically
> amended and which is available upon request from the
> department of Human Resources.

<u>Id.</u>  A plaintiff, who "sign[ed] a paper-writing," was "under a

duty to ascertain its contents."  <u>Williams</u>, 18 S.E.2d at 366. In

another Middle District of North Carolina case involving the

DRP, another court has observed that "the signer of a document

is charged with full knowledge of its contents and with assent

to the terms contained therein."  <u>Armstrong v. Duke Univ.</u>, No.

1:04CV01206, 2006 WL 213952, at *4 (M.D.N.C. Jan. 27, 2006)

(citations omitted).  As such, this court finds that Plaintiff

is responsible for the contents of the Candidate Certification

form, including the agreement to arbitrate, regardless of font

size or page formatting.

-13-

Plaintiff's arguments regarding the unconscionability of her employment contract's formation are unpersuasive.[3] As discussed above, Plaintiff raises a number of arguments regarding the alleged disparity in bargaining power between her and Defendant. (Pl.'s Resp. (Doc. 16) at 7-9.)

"An inquiry into unconscionability requires that a court consider all the facts and circumstances of a particular case, and if the provisions are then viewed as so one-sided that the contracting party is denied any opportunity for a meaningful choice, the contract should be found unconscionable." Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93, 102, 655 S.E.2d 362, 369 (2008) (internal punctuation and quotation marks omitted). "A party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability." Id., 655 S.E.2d at 370.

"[U]nconscionability is an affirmative defense, and the party asserting it has the burden of proof." Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93, 102, 655 S.E.2d 362,

---

[3] As an aside, other courts in the Middle District of North Carolina have specifically held that Duke's DRP is enforceable and, by implication, not unconscionable. See Armstrong v. Duke Univ., No. 1:04CV01206, 2006 WL 213952, at *4 (M.D.N.C. Jan. 27, 2006); Martin v. Vance, 133 N.C. App. 116, 514 S.E.2d 306 (1999); Futrelle v. Duke Univ., 127 N.C. App. 244, 488 S.E.2d 635 (1997).

-14-

369 (2008). "Procedural unconscionability involves 'bargaining naughtiness' in the formation of the contract and is equated with the words 'unfair surprise' . . . and with the phrase 'lack of meaningful choice.'" Rite Color Chem. Co. v. Velvet Textile Co., 105 N.C. App. 14, 20, 411 S.E.2d 645, 648 (1992) (internal punctuation and quotation marks and citation omitted). "Procedural unconscionability includes "fraud, coercion, undue influence, misrepresentation, [and] inadequate disclosure." King v. King, 114 N.C. App. 454, 458, 442 S.E.2d 154, 157 (1994). Plaintiff's allegations are not sufficient to plausibly state a claim of procedural unconscionability as Plaintiff fails to allege "fraud, coercion, undue influence, misrepresentation, inadequate disclosure." Id.

"Substantive unconscionability, on the other hand, involves the harsh, oppressive, and one-sided terms of a contract from which a party seeks relief. Such terms are generally characterized as being unreasonably favorable to the other party to the contract." Rite Color, 105 N.C. App. at 20, 411 S.E.2d at 648-49 (internal quotation marks and citations omitted). As discussed below, the agreement was supported by mutual consideration - both parties are bound to arbitrate any disputes. Plaintiff is unable to plausibly allege any

"one-sided" terms. As such, Plaintiff cannot allege substantive unconscionability.

Plaintiff's argument that the DRP somehow lacks consideration is unpersuasive because "no consideration is required above and beyond the agreement to be bound by the arbitration process for any claims brought by the employee [and the defendant]'s promise to arbitrate its own claims is a fortiori adequate consideration for this agreement." Adkins, 303 F.3d at 501 (internal quotation marks and punctuation and citation omitted); see O'Neil v. Hilton Head Hosp., 115 F.3d 272, 274 (4th Cir. 1997); Johnson v. Circuit City Stores, 148 F.3d 373, 378 (4th Cir. 1998).

These holdings are consistent with North Carolina law, because "[w]here each party agrees to be bound by an arbitration agreement, there is sufficient consideration to uphold the agreement." Martin v. Vance, 133 N.C. App. 116, 122, 514 S.E.2d 306, 310 (1999); Howard v. Oakwood Homes Corp., 134 N.C. App. 116, 119, 516 S.E.2d 879, 881 (1999). "This Court has established that mutual promises to submit a dispute to arbitration constitute adequate consideration." King v. Bryant, 225 N.C. App. 340, 346, 737 S.E.2d 802, 807 (2013).

This court finds that Plaintiff and Defendant's agreement to arbitrate was supported by mutual consideration because "the

-16-

mutual promise to abide by the provisions of the DRP and to relinquish the right to pursue certain disputes in court is sufficient consideration to support the DRP agreement." Howard, 134 N.C. App. at 120, 516 S.E.2d at 882.

Plaintiff's argument that the agreement to arbitrate is somehow incomplete or unenforceable because the Candidate Certification Form did not contain the actual substance of the DRP is also unpersuasive. The Fourth Circuit has held that "[b]y continuing employment with GMRI for three months after [the plaintiff] knew that the terms of the DRP would apply to him, [he] demonstrated acceptance of the DRP. Therefore, [the plaintiff] is bound by its final, binding arbitration provisions." Hightower v. GMRI, Inc., 272 F.3d 239, 243 (4th Cir. 2001); see also King v. Oakwood Home, Inc., No. Civ. 1:99CV00549, 2000 WL 1229753, at *5 (M.D.N.C. Aug. 3, 2000) ("Continued employment with actual notice of the implementation of a dispute resolution program evidences an employee's mutual assent to a binding arbitration agreement contained therein."). The parties agree that, in December of 2014, Plaintiff received and reviewed the DRP, returning and signing an Acknowledgement of Receipt on December 19, 2014. (Doc. 19 at 4.) This court finds that Plaintiff consented to the DRP because she continued

-17-

to work from this date to the date of her resignation after learning of the DRP.

This court finds that Plaintiff and Defendant's agreement to arbitrate was not unconscionable and that Plaintiff and Defendant had a valid and enforceable arbitration agreement.

### 2. **The Arbitration Provision Covers the Present Disputes**

Plaintiff agreed to arbitrate "any dispute or controversy arising out of or related to [her] employment or termination by Duke University." (Evans Decl., Ex. B (Doc. 12-1) at 12.) The Fourth Circuit has "consistently held that an arbitration clause encompassing all disputes 'arising out of or relating to' a contract embraces 'every dispute between the parties having a significant relationship to the contract regardless of the label attached to a dispute.'" Wachovia Bank, Nat'l Ass'n v. Schmidt, 445 F.3d 762, 767 (4th Cir. 2006) (quoting Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93 (4th Cir. 1996)). "In determining whether such a significant relationship exists, a court must review the factual allegations underlying the particular claim and evaluate the connection between those allegations and the contract containing the arbitration clause." Great Am. Ins. Co. v. Hinkle Contracting Corp., 497 F. App'x 348, 354 (4th Cir. 2012). "The interpretation of arbitration agreements

-18-

is governed by state rules of contract interpretation." <u>NCR Corp. v. Jones</u>, 157 F. Supp. 3d 460, 463-64 (W.D.N.C. 2016), <u>appeal dismissed</u> (May 9, 2016) (<u>citing</u> <u>Rota-McLarty v. Santander Consumer USA, Inc.</u>, 700 F.3d 690, 699 (4th Cir. 2012)). As such, this court must determine whether the facts alleged in the Complaint "arise out of or relate to" Plaintiff's employment under North Carolina state law, which this court already determined is covered by a valid arbitration agreement.

Plaintiff alleges a number of facts regarding her employment at Duke and acts arising during the course of her employment. (Compl. (Doc. 2) ¶¶ 13-30.) Each of Plaintiff's claims – Title VII Discrimination, Title VII Retaliation, and Constructive Discharge – factually relate to her employment. (Compl. (Doc. 2) ¶¶ 33-61.)

"An arbitration clause is a contractual term, and general rules of contract interpretation must be applied to determine a clause's applicability to a particular dispute." <u>Liberty Mut. Fire Ins. Co. v. KB Home</u>, No. 5:13-CV-831-BR, 2015 WL 4877835, at *4 (E.D.N.C. Aug. 14, 2015).

"North Carolina has a strong public policy favoring arbitration." <u>Red Springs Presbyterian Church v. Terminix Co. of North Carolina</u>, 119 N.C. App. 299, 303, 458 S.E.2d 270, 273 (1995). "Interpreting a contract requires the court to examine

-19-

the language of the contract itself for indications of the parties' intent at the moment of execution." State v. Philip Morris USA Inc., 359 N.C. 763, 773, 618 S.E.2d 219, 225 (2005). "If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." Walton v. City of Raleigh, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996). "Courts look . . . to the relationship of the claim to the subject matter of the arbitration clause." Collie v. Wehr Dissolution Corp., 345 F. Supp. 2d 555, 562–63 (M.D.N.C. 2004) (citing Rodgers Builders, Inc. v. McQueen, 76 N.C. App. 16, 24, 331 S.E.2d 726, 731 (1985)) (collecting cases regarding "other courts' application of analogously broad arbitration agreements to various tort and contract claims") (internal punctuation and quotation marks omitted).

Here, the plain language of the contract is clear – the parties intended to arbitrate "any dispute or controversy arising out of or related to [Plaintiff's] employment or termination by Duke University." (Evans Decl., Ex. B (Doc. 12-1) at 12.) North Carolina courts apply the same "significant . . . relationship" test analyzed above. See Fontana v. Se. Anesthesiology Consultants, P.A., 221 N.C. App. 582, 589, 729 S.E.2d 80, 86 (2012). This court finds that Plaintiff's claims bear a significant relationship to the subject matter of the

-20-

arbitration clause, which was her employment and disputes related to her employment. Id.; see Collie, 345 F. Supp. 2d at 263. Further, "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Arbitration Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Cara's Notions, Inc. v. Hallmark Cards, Inc., 140 F.3d 566, 569 (4th Cir. 1998) (internal quotation marks and citation omitted).

When faced with similar employment claims, courts have found that the claims arise out of or relate to a plaintiff's employment and are thus subject to arbitration. See, e.g., Johnson, 148 F.3d at 379; Greene v. Durham Reg'l Hosp., No. 1:10CV824, 2014 WL 6634597, at *4 (M.D.N.C. Nov. 24, 2014), report and recommendation adopted, 1:10CV824, 2015 WL 12752918 (M.D.N.C. Feb. 18, 2015); Nereim v. Premara Fin., Inc., No. 3:14-cv-00096-FDW-DSC, 2014 WL 2882692, at *3 (W.D.N.C. June 25, 2014); Thomas v. Right Choice MWM, Inc., No. 3:13-cv-00512-FDW-DSC, 2014 WL 1632946, at *2 (W.D.N.C. Apr. 23, 2014).

Finally, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of

-21-

arbitration . . . ." <u>Moses H. Cone Mem'l Hosp. v. Mercury</u>
<u>Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983); <u>Cara's Notions</u>, 140
F.3d at 569; <u>Am. Recovery Corp.</u>, 96 F.3d at 92.

Because the agreement between Plaintiff and Defendant
included a valid arbitration clause that covered all the alleged
facts in the Complaint, this court concludes that arbitration is
proper.

## II. **PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT**

### A. **Background**

Plaintiff moved for leave to supplement her Complaint (Doc.
21) and attached the proposed Supplemental Complaint (Doc.
21-1). Defendant responded opposing the motion (Doc. 25) and
Plaintiff replied (Doc. 26).

#### 1. **Supplemental Facts**

In her Supplemental Complaint, Plaintiff alleges that
"Nazarova executed a Duke Confidentiality agreement as part of
the condition of her employment, the terms of which shall be
complied with by all Duke Staff." (Supplemental Complaint
("Suppl. Compl.") (Doc. 21-1) ¶ 8.1.) She also alleges that her
new employer, the Library of Congress, contacted Defendant, at
which time "Defendant . . . described Nazarova's employment with
Duke to [the Library of Congress] as unfavorable" and disclosed

-22-

information allegedly in violation of the Confidentiality Agreement. (Id. ¶¶ 32.1, 32.2.)

As a result, "Nazarova received a Memorandum [] from [the Library of Congress] demanding a response and detailed explanation as to why her employment with Duke[] was described by the Defendant as being not entirely favorable and was told to describe what corrective actions she received as part of her employment with Duke." (Id. ¶ 32.3.)

Plaintiff supplemented her second claim (retaliation) to include the allegedly retaliatory action by Defendant during its communication with the Library of Congress. (Id. ¶ 47.1.)

Plaintiff also added a fourth claim for breach of Defendant's Confidentiality Agreement. (Id. ¶¶ 62-65.) Plaintiff alleges that the breach "caused her injuries including but not limited [to] emotional distress, mental pain, suffering, stress and worry about maintain her new job" as well as punitive damages." (Id. ¶¶ 63-64.)

**B.    Standard of Review**

Federal Rule of Civil Procedure 15(d) provides "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." The Fourth Circuit has

-23-

outlined that "the standards used by a district court in ruling on a motion to amend or on a motion to supplement are nearly identical." <u>Franks v. Ross</u>, 313 F.3d 184, 198 (4th Cir. 2002). "Rule 15(d) motions are to be evaluated under the same standards used to evaluate motions to amend pleadings under Rule 15(a), which generally states that leave to amend shall be freely granted when justice requires unless there are valid reasons for denying leave, such as undue delay, bad faith, or futility." <u>Estate of Williams-Moore v. All. One Receivables Mgmt., Inc.</u>, 335 F. Supp. 2d 636, 644 (M.D.N.C. 2004); <u>see</u> <u>Lindsay v. Glick</u>, 1:15CV596, 2016 WL 1650771, at *2 (M.D.N.C. Apr. 22, 2016); <u>Redfear v. Smith</u>, No. 1:08CV904, 2010 WL 4054324, at *8 (M.D.N.C. Oct. 12, 2010), <u>report and recommendation adopted,</u> 1:08CV904, 2011 WL 1213157 (M.D.N.C. Mar. 29, 2011).

### C.  **Discussion**

Defendant argues that "all of Plaintiff's claims are subject to a valid and enforceable arbitration agreement." (Doc. 25 at 3.) Defendant also argues that "[e]ven if this Court were to consider Plaintiff's motion, the proposed additional claims fall within the scope of the parties' arbitration agreement." (<u>Id.</u>) Finally, Defendant argues that "Plaintiff's motion should be denied on grounds of futility." (<u>Id.</u> at 4.)

Plaintiff replies that "none of her claims are subject to a valid and enforceable agreement." (Doc. 26 at 4.)[4] Plaintiff argues that "[a]t the time of the incident the Plaintiff was no longer employed by Duke and was not bound by the arbitration agreement or DRP terms." (Id. at 6.)

In addition to the above analysis concerning the coverage of the arbitration agreement, the Fourth Circuit has outlined that "when an arbitration clause is invoked after the contractual relationship between the parties has ended, the parties' intent governs whether the clause's authority extends beyond the termination of the contract." Zandford v. Prudential-Bache Sec., Inc., 112 F.3d 723, 727 (4th Cir. 1997); see Virginia Carolina Tools, Inc. v. Int'l Tool Supply, Inc., 984 F.2d 113, 119 (4th Cir. 1993); In re Startec Glob. Commc'ns Corp., 300 B.R. 244, 250 (Bankr. D. Md. 2003). Here, Plaintiff agreed to arbitrate "any dispute or controversy arising out of or related to my employment or termination by Duke University." (Evans Decl., Ex. B (Doc. 12-1) at 12) (emphasis added). Because the parties included any potential disputes arising out

---

[4] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

of Plaintiff's termination by Duke, this court concludes that the parties intended the arbitration clause extend beyond the end of her employment.

In Zandford v. Prudential-Bache Securities, Inc., 112 F.3d 723 (4th Cir. 1997), the Fourth Circuit adopted the "significant aspects" test. See Webb v. Harris, 378 F. Supp. 2d 608, 612 (M.D.N.C. 2005) (applying the Zandford court's adoption of the test in an employment context). "In applying Morgan's 'significant aspects' test, some courts have elaborated that the proper question is whether resolution of the claim depends upon evaluation of a party's performance . . . during the time of the contractual relationship." Zandford, 112 F.3d at 729 (internal quotation marks omitted). Further, "defamation respecting an employee's job performance [has] been held arbitrable . . . because they necessarily involve an evaluation of the employer's or the employee's performance during their employment relationship." Id.; Webb, 378 F. Supp. at 612 ("A review of reported decisions reveals that tort claims for post-termination defamation have consistently been held to "arise out of employment" and thus, be deemed arbitrable, because such claims frequently involve an evaluation of the former employee's work performance."). The court finds this logic persuasive, as Plaintiff alleges "Defendant purposefully and unnecessarily

-26-

disclosed sensitive information such as employee records and more specifically disciplinary actions on file with Duke for Nazarova to her new employer . . . ." (Suppl. Compl. (Doc. 21-1) ¶ 47.1.)  Plaintiff's allegations are that Defendant disclosed information regarding her time as an employee at Duke, which would seemingly include comments or evaluation of her job performance. (See id.) This court concludes that any such communications "meet the test, hence are arbitrable." Zandford, 112 F.3d at 729.

As discussed above, all of Plaintiff's "Supplemental Facts" contained in Section II(A)(1) "aris[e] out of or relate[] to [her] employment or termination by Duke University." (Evans Decl., Ex. B (Doc. 12-1) at 12.)  As such, even if Plaintiff could make a sufficient showing to supplement her pleadings under Federal Rule of Civil Procedure 15(d), her potential new claims are properly covered by the arbitration agreement and subject to arbitration.  For this reason, Plaintiff's Motion for Leave to File Suplemental [sic] Complaint (Doc. 21) will be denied as futile. See Estate of Williams-Moore, 335 F. Supp. 2d at 644.

## III. **<u>PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE TO STRIKE THE EVIDENCE</u>**

Plaintiff moves to strike "Exhibit B," which was attached to Defendant's Motion to Compel, on the ground that it includes her birth date and social security number in violation of Federal Rule of Civil Procedure 5.2. (Doc. 20 at 1-2.)

Defendant responded that the disclosure of Plaintiff's personal information was inadvertent and described the steps it took to remedy the situation, which included filing an appropriately redacted version of the exhibit in question. (Doc. 24 at 1-2.)

In light of the fact that Defendant's error was inadvertent and quickly remedied when brought to its attention, this court sees no basis for sanctions and thereby will deny Plaintiff's motion to strike.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration or, in the Alternative, to Dismiss the Complaint for Lack of Subject Matter Jurisdiction (Doc. 11) is **GRANTED** and that Plaintiff's Motion to Strike Defendant's Motion to Compel (Doc. 20) and Motion for Leave to File Suplemental [sic] Complaint (Doc. 21) are **DENIED.**

-28-

**IT IS FURTHER ORDERED** that this action is **STAYED** until arbitration has been had in accordance with the terms of the dispute resolution agreement.

The Clerk shall mark the case as inactive. Within 30 days of completion of the arbitration, the parties shall file a joint report advising the court of completion of the arbitration and whether further proceedings in this court are required.

This the 2nd day of March, 2017.

_____
                    United States District Judge